## Q. A. BURTON v. E. H. LANDON.

### January Term, 1894.

*Specific performance.   Agreement to settle pending suits.
   When court will determine values for purpose of
      specific performance.    Unreasonable delay.
         Waiver of provision in one's own favor.*

1.   A written agreement to settle a suit in chancery may be spe-
     cifically enforced by cross-bill in that suit.

2.   L. mortgaged his farm to B., who assigned the notes and
     mortgage to N. as collateral security.   N. foreclosed the
     mortgage and began a suit at law returnable to the Chit-
     tenden County Court for the claimed difference in value
     between the debt and the security.   He obtained a fore-
     closure, which became absolute, and subsequently sold the
     premises for five thousand five hundred dollars, which was
     less than the amount of the debt.   Both B. and L. claimed
     that this was much less than the value of the premises, and

B. said he would compel N. to account to him for their actual value. By an agreement with N., B. obtained control of the suit at law against L. for his own benefit. L. brought a suit in chancery against B. in reference to matters connected with the giving of the original mortgage, in which he sought to recover considerable sums. In this state of things B. and L. entered into a written agreement that the aforesaid suit at law should be tried at the next term of the Chittenden County Court; that B. should pay to L. one-half the difference between the value of the farm as determined in that suit and five thousand five hundred dollars, and that thereupon all suits between them should be entered non-suit without cost. _Held_, that this was an agreement for the settlement of their suits which would be specifically enforced.

3. That B. told the solicitor of L. that he did not believe that he, B., could make N. liable for more than the amount actually received from the sale of the premises, would be no reason why L. might refuse to execute the agreement on his part.

4. Ordinarily courts of equity will only decree a specific performance in the exact terms of the contract, and when the contract itself provides that values, essential to the execution of the contract, shall be fixed by a certain method, specific performance will not be decreed unless they have been determined in that manner.

5. But when the determination of the value is a mere incident to the contract, the court may arrive at it by some other method. So in this case, although the parties have agreed that the value of the premises should be determined by a jury upon a trial of the law suit, the court may refer that question to a master.

6. A party seeking the specific performance of a contract may waive a provision in his own favor, or consent to a construction most favorable to the other party, if uncertainty be thereby obviated.

7. Although time be not essential in a contract, if it be material, a party cannot have specific performonce who has unreasonably delayed.

8. This agreement was made October 30, 1890. By its terms the law suit was to be tried at the April term, 1891. The suit was not tried then, but B. paid L.'s solicitor fifty dollars towards the expense of looking up testimony, and was ready to go along with him. June 18, 1891, the solicitor of L. notified B. that L. would not proceed further. _Held_,

no unreasonable delay on the part of B. up to the time of L.'s refusal to perform.

9.  Nor did B. unreasonably delay to insist upon the performance of the agreement after L.'s refusal, the matter having been called up in connection with the main case at the first term after such refusal, a motion setting forth the contract having been filed January 6, 1892, and this cross-bill January 23 following.

This is a cross-bill filed in the suit *E. H. Landon* v. *O. A. Burton*, to specifically enforce a contract for the settlement of that suit. Heard at the August term, Grand Isle county, 1892, upon bill, answer and proofs. START, chancellor, dismissed the cross-bill. The orator in that bill appeals.

*Farrington & Post* for the orator.

A cross-bill will lie to enforce a settlement of the suit in which it is filed. 2 Dan. Ch. Pr. (Perkins Ed.), 1649 and cases cited; Sto. Eq. Pl. (8th Ed.), s. 393; *Rutland* v. *Page et al.*, 24 Vt. 181; 2 Dan. Ch. Pr., 1656-1678.

Time is not of the essence of this contract. 1 Sto. Eq. Jur., s. 776; Fry, Sp. Perf. Cont., ss. 710-713; 1 Chitty, Cont. 433; 2 Chitty, Cont. 1068, 1072 and note (i).

*H. C. Adams* for the defendant.

The agreement which it is sought to enforce ousts the court of its jurisdiction and is not enforceable. *Wood* v. *Humphrey*, 114 Mass. 185; 2 Sto. Eq. Jur. (9th Ed), 685 and cases cited.

ROWELL, J. This is a cross-bill for the specific performance of that part of a contract between the parties that provides for the dismissal of the original bill. Counsel agreed, and the court consented, to hear this matter before proceeding further with the main case.

Landon mortgaged his farm to Burton. Burton turned out the notes and assigned the mortgage to Noyes as collateral security. Noyes proceeded to foreclose, and at the same time sued Landon to recover the claimed difference between the value of the farm and the amount of the mortgage debt. Noyes obtained a decree of foreclosure, which became absolute, and the executors of his will, he having died, sold the farm for $5500. Both Burton and Landon claimed that the farm was worth much more than that, and Burton said he should make Noyes's estate account to him for its full value. By an agreement between Burton and said executors, the suit against Landon, which was pending in Chittenden County Court, was controled by Burton on the part of the plaintiffs for his own benefit. Landon brought the original bill in this case against Burton, returnable to the Grand Isle County Court of Chancery, in respect of matters connected with the giving of said mortgage, and thereby sought to recover a considerable sum of money. In this condition of things, and on October 30, 1890, these parties agreed in writing that they would go on and take testimony in the Noyes case, and by depositions as far as practicable, and try the case at the next April term, and that each should be entitled to and receive one-half of the difference between $5500 and the value of the farm as found and adjudged in that case ; that each should pay one-half of the counsel fees and other expenses of trying the case, and that all suits then pending between them should be entered, "nonsuit without cost," at the then next term of court ; that Burton should divide said difference with Landon when final judgment was rendered in the Noyes case, and also, that Landon's half should be paid to him as soon as it was paid to Burton or allowed to him in his account with Noyes's estate ; and that when the contract was executed and completely carried out, they should pass receipts. At the time this contract was made, Burton paid Landon's solicitor $50

and something more for expenses in looking up testimony in the Noyes case.

The then next term of the Court of Chancery in Grand Isle County was in February, 1891, so that by the terms of said contract the original bill in this case was to be dismissed before the Noyes case was to be tried. But the bill is still pending. Nor was the Noyes case tried as stipulated, but is still pending. Just before the 18th of June, 1891, Landon, by his solicitor, notified Burton that he should not perform said contract on his part, and he has ever since refused to perform it. This action was taken on the part of Landon because Burton had told Landon's solicitor that he thought it was doubtful whether he could make Noyes's estate account to him for more than the amount it actually received for the farm, and because the solicitor could not see, if Burton thought so, what motive he could have in carrying out said contract in good faith, but thought his motive would be the other way. We do not think, and it is not really claimed, that this entitled Landon to withdraw from the contract. It does not appear to have been anything but the expression of an opinion, and does not show that Burton did not intend to go on in good faith under the contract.

The defendant's principal claim is that said contract is, in effect, an agreement to arbitrate, and, as such, goes to the root of the main case, and if executed, would entirely oust the Court of Chancery of jurisdiction thereof, and therefore is non-enforcible, both at law and in equity. *Wood* v. *Humphrey*, 114 Mass. 185. But it is obvious that the contract is not of that character, but is, in legal effect, a contract for the settlement of the suits then pending between the parties; and being such, it is enforcible if a case is made to warrant it. *Richardson* v. *Eyton*, 2 DeG. M. & G. *79; *Pryer* v. *Gribble*, L. R. 10 Ch. App. Cases, 534.

It is a general rule that the court will not compel the specific performance of a contract unless it can execute the

whole on both sides, or at least such parts of it as the court can ever be called upon to execute. The court will not, it is said, specifically perform a contract piecemeal, but must perform it in its entirety if at all. So when we come to the specific performance of a contract containing many particulars, we must see that it is possible to execute it effectually, for the court cannot say that when an event afterwards arises it will then execute it. Sometimes this difficulty is obviated by a waiver of the thing to be done in future, if it is solely for the benefit of the party asking for the specific performance; but if it is for the benefit of the other party, he cannot waive it. But contracts that are divisible form an exception to this rule, and a specific performance of part is often decreed. In cases coming within the general rule, the difficulty lies in the subject matter of the contract as being something that the court cannot ascertain by judicial inquiry, or cannot lay hold of so as to establish the rights concerning it. If it is possible to accomplish this fundamental part of the decree there would seem to be no insuperable objection to a specific performance. As a general proposition the court acts only on the principle of executing the contract in specie and in the very terms in which it is made. When, therefore, values are to be fixed by those whose appointment is stipulated for, a specific performance will not, as a rule, be decreed, unless the value has been determined as provided, and in such a manner as to become a term of the contract But if the provision for valuation is not an essential element of the contract, but is merely collateral, incidental, or auxiliary to its main scope and purpose, the court will specifically perform the contract, if otherwise a proper one, and, in so doing, will, in some manner, fix the value. Pom. Cont. s. 309.

If it can be said that the contract in question provides, in effect, that the difference between the value of the farm and what it was sold for shall be ascertained by a jury in Chit-

tenden County, it is considered that that stipulation is not an essential element of the contract, but is merely auxiliary to its main scope and purpose, and that therefore there is no obstacle in the way of the court's adopting a method of its own to ascertain that difference.

The contract is somewhat uncertain as to when Burton is to pay Landon his half of that difference; whether when final judgment is rendered in the Noyes case, as one clause of the contract provides, or when Burton is paid that difference by Noyes's estate, or it is allowed to him in his account therewith, as another clause provides. But Burton construes the contract to be that he shall pay when final judgment is rendered in the Noyes case, and in argument waives, in effect, all right to longer delay payment, which obviates any difficulty arising from this uncertainty.

Time, in this contract, we do not regard as essential. In equity, time is not generally regarded as essential unless the parties have made it so or it is necessarily so from the nature and circumstances of the contract. Neither of these things exist here.

But although time is not essential, it is material, and specific performance will not be decreed if the party asking it has unreasonably delayed to insist upon the contract or to perform it on his part. This brings us to consider whether Burton is in fault in these respects.

As to going on with the contract, the agreement was that the parties should go on together, and from the fact that Burton paid Landon's solicitor fifty dollars and something more as and for expenses in looking up testimony, it would seem that the understanding was that the solicitor should go ahead in the matter, and it appears that Burton was ready to go along with him and insisted from time to time upon going along, up to the time said solicitor gave him notice that Landon would not abide by the contract. Thus is Burton's delay up to this time accounted for, and, in the cir-.

cumstances, it was not unreasonable. After this, Landon having refused to perform, it is enough that Burton has been and still is ready to perform, and offers in his pleadings to perform.

As to insisting upon the contract after Landon's refusal to perform. This cross-bill was brought on January 23, 1892. On the 6th of said January the orator therein filed a motion before the chancellor, setting out the contract, and asking for a dismissal of the original bill as therein provided. It appears from the testimony of Mr. Adams that said contract was before that time brought to the attention of the court, but it does not appear how, nor clearly when, but it would seem from what Mr. Adams says that it was at the August term, 1891, of the court in which the main case was pending, and it was subsequently mentioned between the solicitors of the parties, but it does not appear just what they said about it. It is considered, therefore, that there was not such neglect to insist upon the contract, nor such delay in applying to the court for a specific performance of it, as to disentitle the orator to its execution.

There being, then, no obstacle in the way of specific performance,

*The decree appealed from is reversed and the cause remanded, with directions that there be a reference to a special master to ascertain and report the difference, if any, at the time in question, between the value of the farm mentioned in the pleadings and the price at which it was sold, namely, five thousand five hundred dollars, and that on the coming in of his report it be declared that the contract in the cross-bill mentioned ought to be specifically performed and carried into execution, and to order and decree accordingly, and that the matter of costs below be there determined.*