BOSTON & MAINE RAILROAD *v.* UNION MUTUAL FIRE INSURANCE
COMPANY.

January Term, 1917.

Present:    MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed, October 2, 1917.

*Insurance—Unpaid Assessments—"Expenses and Discounts"—*
*Agreements for Compromise of Disputed Claims—Tender—*
*When not Required—Specific Performance—Averment of*
*Willingness to Perform—Time for Performance—Delay—*
*Equitable Relief.*

An unpaid assessment on a fire insurance policy, which had been de-
ducted by the insurer from the amount due the insured under said
policy for a loss, is not included in the term "expenses or dis-
counts" in an offer made by one charged with liability for the fire
to pay the insurer fifty per cent. of the actual amount paid to the
insured "with no allowance for expenses or discounts."

An unpaid assessment on a fire insurance policy is a valid debt due
from the insured to the insurer, and may be properly used by the
latter in part payment of a loss under said policy.

Agreements fairly entered into for the compromise and settlement of
disputed claims are favorably regarded in a court of equity, and
are supported as beneficial in themselves and conducive to peace
and harmony, when this can be done without making injustice,
and does not override other principles upon which courts of equity
proceed in the specific enforcement of contracts.

After an agreement of settlement has been made, a suit brought upon
the alleged original liability is notice of the attempted rescission of
the agreement, and the necessity of a tender of the sum due under
the agreement, if it before existed, is obviated, because it would
be useless and is therefore not required.

Where, after an attempted rescission of an agreement of compromise,
by bringing suit upon the alleged original liability, the defendant
therein brings a bill in equity for the specific performance of the
agreement, it is sufficient to aver in the bill, a readiness and will-
ingness to perform in compliance with the terms of the agreement,
and an offer to do so.

Where no time is set for the performance of an agreement of com-
promise, a reasonable time is allowed by law, and, while time is
not essential to the performance of the contract, it is material.

Delay in the performance of an agreement of compromise will not prevent a decree of specific performance, where the state of things as it was before the making of the agreement cannot be restored, and the situation has not been so altered that the decree would be inequitable, nothing but money being due and the payment of interest thereon being, in equity, full compensation for the delay.

After a loss by fire, claimed to have been caused by plaintiff's negligence, six insurance companies which had insured the property settled the loss, and by agreement became subrogated to the rights of the insured against the plaintiff. Plaintiff offered to settle by paying to the companies fifty per cent. of the amounts paid by them to the insured, with no allowance for expenses or discounts. The offer was accepted by the insurance companies, but defendant, one of the insurers, refused to accept the sum offered because the amount of an unpaid assessment, due from the insured to defendant at the time of the fire, was deducted therefrom. After suit had been commenced by defendant against plaintiff to recover the entire amount paid by it to the insured, and judgment rendered on the pleadings against plaintiff, the latter brought a bill in equity to enjoin the suit at law, and to compel the enforcement of the agreement of settlement. *Held*, plaintiff was entitled to the equitable relief sought.

APPEAL IN CHANCERY. Heard on bill, answer, report of special master, and plaintiff's exceptions thereto at the March Term, 1916, Washington County, *Waterman*, Chancellor. Decree, overruling plaintiff's exceptions to the report, and dismissing the bill, with costs to defendant. Plaintiff appealed. The opinon states the case.

*George B. Young* and *Walter H. Cleary* for plaintiff.

*Porter, Witters & Harvey* for defendant.

WATSON, J. When this case was here before, the bill was held sufficient on demurrer, and the cause remanded. 83 Vt. 554, 77 Atl. 874. The cause being then heard before a special master, and exceptions to his report filed by the plaintiff, the chancellor rendered a decree overruling the exceptions and dismissing the bill with costs to the defendant. Therefrom the plaintiff appealed.

The bill is brought to enjoin the defendant from prosecuting a certain action at law against the plaintiff, and for the specific enforcement of an agreement made between the plaintiff and the defendant and six other insurance companies and Cushman and Rankin Company.

It appears from the master's report that on or about May 12, 1905, the factory, machinery, and stock of Cushman and Rankin Company, located at Lyndon, this State, were consumed by fire, and that the defendant company and six other insurance companies were insurers of the property against such loss. It was claimed by the insurers and the insured that the fire originated from sparks communicated by one of the plaintiff's locomotive engines. This claim was denied by the plaintiff. The loss was entire. The insurers settled with the insured on the basis of total loss, and by agreement were subrogated to the rights of the insured.

On November 22, 1905, the plaintiff made an offer in writing, in the nature of a compromise, in reference to the claims arising out of the burning of the property, as follows: "We will pay fifty per cent. of the actual amounts paid to Cushman & Rankin by the insurance companies, with no allowance for expenses or discounts. We will pay to Cusman & Rankin fifty per cent. of their actul loss over and above the amount of insurance received by them, such loss to be determined in the following manner, to wit, .................." This proposition was accepted by the insured, and by all the insurers, including the defendant. Both the plaintiff and the defendant entered into this agreement contingent upon all the other parties, coming into the settlement. The exact amount of the loss had not then been ascertained.

Nothing was said in making the offer nor in its acceptance about any release. But it was understood, expected, and intended by every party that on the payment to the insurance companies of fifty per. cent. of the amount paid by them to the insured, they would release the plaintiff from any claim of liability or damage they might have against the plaintiff by reason of the burning of the property of the insured. And it was understood by all the parties, though not stated, that the settlement would be for cash.

On July 10, 1906, Henry O. Cushman, who represented the insured, wrote from his office in Boston to the defendant, that the

plaintiff was "ready to pay the portion of the Lyndon fire loss agreed upon," and enclosing a release which he said had been .similarly drawn for each insurance company, asking the defendant to have it signed and returned at the earliest moment possible; further stating that the plaintiff would not deliver a check for any one loss until all receipts had been returned, and therefore it was for the interest of the defendant, as well as of others, that they be returned immediately.    The release was returned by the defendant under date of July 14, unsigned, for two reasons: (1) that it was not sufficiently specific as to the loss or liability covered; and (2) the amount stated therein was $741.55, whereas it should be $750.    Regarding the first reason, it is enough to say that the defendant made and executed a release in terms satisfactory to itself, and forwarded the same to Cushman under date of July 23, 1906, which in this respect was also satisfactory to the plaintiff.    This release was, however, rejected by the plaintiff because the money consideration stated therein was $750, instead of $741.55.    This position was taken by the plaintiff because its offer of compromise (which was accepted) was to pay fifty per cent. of the actual amounts paid to the insured by the insurers, "with no allowance for expenses or discounts," claiming that the latter sum was fifty per cent. of all the defendant paid, and that if the $16.90 (mentioned below) came into the matter at all, it was covered by the words "expenses or discounts," used in the offer.    The defendant claimed that it paid the face of its policies, $1,500; that at the time of payment the insured owed the defendant $16.90, as and for an assessment due it at the time of the fire, and the defendant paid itself, or offset, that sum, giving the insured a check for the balance.    The master finds the facts connected with the $16.90, to be as claimed by defendant.    We think the latter's position in this respect was in accordance with the intended and reasonable meaning of the compromise agreement.    That item was not "expenses or discounts."    It was a valid debt due from the insured to the defendant, and as such could be and was used in part payment of the sum due from the latter to the former under the terms of settlement; and when so used, it properly became a part of the actual amount paid.

In sending the release last mentioned to Cushman, the defendant accompanied it with a letter stating that the release was made to read $750, as that was the amount which, by its books,

the company actually paid; that the deduction was for assessments which were due defendant up to the date of the fire; that defendant would not, however, insist upon the payment of the sum of $750, for the reason that it did not desire to delay settlement, and if the plaintiff still refused to pay that sum, defendant would accept the $741.55.

It appears from the record that thereupon Mr. Rich, the general counsel for the plaintiff railroad company, who had these matters in charge, with full knowledge of the contents of the several letters from defendant to Cushman, and of the claim of the former concerning the $16.90, performed the agreement of compromise as to the insured and the other insurers, respectively, paying them in the aggregate the sum of $8,845.91, or $8,850.91, but took no further steps toward the performance thereof as to the defendant.

Thus the matters stood until the 27th day of August, 1908, when the defendant brought for its benefit, in the name of the insured, an action at law against the plaintiff railroad company, to recover for the loss sustained by the fire. Therein the railroad company pleaded ·the release received by it from the insured under the compromise agreement, as a bar to the action, and to the replication filed to such plea, setting up this defendant's rights by subrogation, and that the suit was brought for its benefit, the railroad company interposed a demurrer and, the same being overruled, took an exception and thereon brought the case to this Court. The judgment of the lower court, upholding the replication, was affirmed and the cause remanded in October, 1909. Within the following month these equity proceedings were instituted to have the prosecution of the suit at law perpetually enjoined, and the compromise agreement specifically enforced. A temporary injunction was issued and is still in force.

The master states that the plaintiff is not, and never has been, ready and willing to pay the defendant fifty per cent. of the amount the latter paid the insured, that it did not pay at the time defendant returned the release duly executed, ''and has never since been ready and willing to pay $750, which was the amount proposed in the orator's offer, and even now does not place itself on that ground in the bill now pending, but therein alleges the amount to be $741.55.'' Fairly understood, this finding is tantamount to saying that the plaintiff is not now and never has been ready and willing to pay defendant $750,—not

that plaintiff has not been, and is not now, ready and willing to pay $741.55. It is true that in the tenth and eleventh paragraphs of the bill, the plaintiff alleges in substance that it has been and now is ready and willing, and has offered, to pay the defendant the sum of $741.55, in accordance with the terms of the agreement. But its averments and offer in the fifteenth paragraph are broader as to amount, being "that it is now ready and willing to pay and hereby offers to pay . . . the one-half of all the money which the defendant herein paid to thee" insured by reason of the burning of the latter's property, "in compliance with the terms of said agreement."

A comparative examination of the facts found by the master, and those alleged in the bill which, on demurrer, were held sufficient to entitle the plaintiff to the relief sought, show no material difference in matters essential to the plaintiff's case, except the difference of $16.90 in the sum paid by the defendant to the insured, and except further in respect to the plaintiff's willingness, desire, and offer, to perform the compromise agreement.

We have already noticed that the said variation of $16.90 was at most a dispute as to how that item, a mere subordinate matter, should be treated in determining the actual amount paid by defendant to the insured, in view of the phrase in the agreement, "with no allowance for expenses or discounts," and each party acted according to its own view. Whatever the actual amount paid proved to be under the proper interpretation of the agreement, the plaintiff was bound to pay, and the defendant to accept, fifty per cent. thereof in settlement. So the difference in the views of the parties in this respect, constituted no real obstacle in the way of executing the agreement within such time as, in the circumstances, would reasonably answer the requirements of its provisions. Indeed, by its letter of July 23, 1906, to Cushman, of which the plaintiff's general counsel had knowledge, the defendant offered to accept the smaller sum if the plaintiff still refused to pay the larger. If this difference had previously been such an obstacle, it was no longer so.

The agreement included as parties each and all the insurers, the insured, and the railroad company, as required by the latter and by defendant. It in terms covered all matters between the railroad company and each and all the other parties named, growing out of the burning of the insured's property. The

claims being made against the railroad company were doubtful in character.    The contract was single and entire, the consideration of which was the mutual promises of the parties.    It was fully performed by the insured, by all the insurers except the defendant, and by the railroad company except as to the defendant's claim.    Nothing remains to be done to effect a full performance by all the parties interested, except the payment by the plaintiff company to the defendant of the sum due it under the compromise, and the giving of a release by the latter.    The agreement was without fraud or imposition.    It was certain, fair, and just in all its parts.    Agreements fairly entered into for the compromise and settlement of disputed claims are favorably regarded in a court of equity, and are supported as beneficial in themselves and conducive to peace and harmony, when this can be done without working injustice, and does not override other principles upon which courts of equity proceed in the specific enforcement of contracts.    5 R. C. L. 901.    This same case, 83 Vt. 554, 77 Atl. 874.

The plaintiff's delay in performing the contract as to the defendant since the latter instituted its suit at law is sufficiently accounted for.    The bringing of that suit based upon the alleged original liability of the plaintiff to the insured was notice to the former of the defendant's attempted rescission of the agreement of compromise, and the necessity of a tender by the plaintiff of the sum due defendant under the terms of that agreement was obviated, if it before existed; for a tender would then have been useless, and was not required.    *Van Dyke* v. *Cole,* 81 Vt. 379, 70 Atl. 593.    By pleading in defence of the action at law, the release given by the insured in execution of the agreement, the plaintiff undertook to stand upon the agreement as still existing; and when the ruling of this Court was had against it on the pleadings in that case, the plaintiff, without unreasonable delay, filed its bill asking that the agreement, as to the defendant's claim, be specifically enforced.    In the circumstances existing, the plaintiff was justified in instituting proceedings at once to compel such enforcement, and in so doing it was enough to aver in the bill the plaintiff's readiness and willingness to perform in compliance with the terms of the agreement, and an offer so to do.    3 Pom. Eq. Sec. 1407; *Oakey* v. *Cook,* 41 N. J. Eq. 350, 7 Atl. 495.    See *Amsden* v. *Atwood,* 68 Vt. 322, 35 Atl. 311.

The failure of the plaintiff to perform the contract as to the

defendant before the latter brought the suit at law, has not been so satisfactorily explained. Time was not essential in the performance of the contract, but it was material. *Burton* v. *Landon,* 66 Vt. 361, 29 Atl. 374. No time was fixed by the agreement within which it should be performed, and consequently a reasonable time was allowed by law. If the contract were wholly between the plaintiff and the defendant, such a delay without showing circumstances reasonably excusing the same would very likely defeat the right to the remedy sought. Mr. Pomeroy says, "If time is material a failure to comply with the terms of the contract is not *necessarily* a bar to an enforcement; but it throws upon the defaulting party the burden of explaining his neglect and of satisfying the court that, notwithstanding the failure, a denial of the remedy to him would be inequitable." Pom. Con. 402. And in *Walker* v. *Jeffreys,* 1 Hare (23 Eng. Ch.) 341, Vice Chancellor Wigram says: "The general rule in equity I take to be, that a party who asks the court to enforce an agreement in his favor must aver and prove that he has performed, or been ready and willing to perform, an agreement on his part. Where, however, the strict application of that general rule would work injustice, the court will relax it. A breach of an agreement may have been committed, for which a jury would only give a nominal damage. A breach may have been committed, which a jury would consider as waived: and if the party committing those breaches has substantially performed other parts of the agreement, whereby, at his expense, the other contracting party has derived benefits under the agreement, a court of equity might fail in doing justice, if it refused to decree a specific performance."

The state of things as they existed before the making of the agreement cannot be restored by returning to the plaintiff what it paid to the several other parties under the compromise. The situation of the defendant and its relations to its claim covered by the agreement have not been so altered that a specific execution would be inequitable. Nothing is due it from the plaintiff under the agreement but money, and for the delay in the payment of that, interest thereon is in equity full compensation. Such order can be made as to the costs in the suit at law as to the court seems just and equitable. The agreement having been thus executed in respect to the claims of all the parties except .the defendant, it is but common justice that it be carried into execution in respect to the claim of the defendant also. If specific en-

forcement be refused and the defendant allowed to repudiate the agreement and prosecute the suit at law to final judgment on its original claim, it would operate as a fraud upon the other insurers and the insured, whose coming into the settlement the defendant made essential to its own participation therein, and as to whom the agreement was fully executed before the defendant's attempted repudiation. By reason of the special circumstances of the case, and to prevent such fraud and injustice, specific performance would seem to be indispensable to justice; and a denial of such remedy would be inequitable to the plaintiff.

The plaintiff being entitled to relief on the facts reported, none of its exceptions have been considered.

*Decree reversed and cause remanded with directions that a decree be entered, that upon the payment by the plaintiff to the clerk of the court of chancery within and for the county of Washington, for the benefit of the defendant, the sum of $750 with simple interest thereon at six per cent. from the first day of September, 1906, to the day of payment, together with the taxable costs of the plaintiff named in the said suit at law, to the time of the bringing of this suit in equity, less the taxable costs of the plaintiff in this equity suit, and also less this plaintiff's taxable costs as defendant in the said suit at law after the bringing of this suit in equity, both of which are to be paid by the defendant (Union Mutual Fire Insurance Company), then the prosecution of the said suit at law shall be perpetually enjoined, and the defendant in this suit in equity shall immediately execute in due form and deliver to said clerk of court, for the benefit of the plaintiff, a release to the plaintiff, which shall be in compliance with the provisions of the said compromise agreement: Provided that if the plaintiff shall fail to comply with the foregoing provisions of the decree within thirty days after the entry of the decree by the chancellor, pursuant to this mandate, then the bill in this case shall be dismissed with costs to the defendant, and the defendant left to prosecute the said action at law as it may be advised.*