*John J. Dunn,* for plaintiff.
*Huddy & Moulton,* for defendant.

MICHAEL DUFFY *vs.* PROVIDENCE TEAMING COMPANY, INC.

JANUARY 9, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

SWEETLAND, C. J. The above entitled case is a bill in equity brought to obtain the specific performance of a contract by which, it is alleged, the respondent contracted to pay compensation to the complainant during the period

of his total and partial incapacity resulting from an injury which the complainant received on August 9, 1926, while in the employ of the respondent.

The case was heard before a justice of the Superior Court upon the respondent's demurrer to the bill. The grounds of demurrer are that the complainant has not stated a case entitling him to relief in equity; that the complainant has an adequate remedy at law; and that the complainant has an adequate remedy under the provisions of the Rhode Island Workmen's Compensation Law. The justice entered a decree sustaining the demurrer and dismissing the bill. The case is before us upon the complainant's appeal from that decree.

It is alleged in the bill that the complainant was injured in an accident which occurred upon the deck of a vessel moored at a wharf upon the navigable waters of Narragansett Bay. The nature of the complainant's work upon said vessel is not set out in the bill. It was, however, treated by both parties in argument and in their briefs as an undisputed fact, that the complainant at the time of the accident was employed by the respondent as a stevedore in the work of unloading said vessel. As that fact appears to be essential in the consideration of certain phases of the questions before us, we will treat it as though specifically alleged. It is stated in the bill that on October 2, 1926, after the accident, the complainant and respondent entered into a written agreement, wherein the complainant waived his right to sue the respondent at common law and agreed to accept in lieu of all other remedies a weekly compensation of $16 per week during the period of his total incapacity, which the respondent promised to pay. This written agreement is not set out in full in the bill, nor is it annexed thereto and made a part thereof. It is stated in the bill that the agreement further provided as follows: "that in the event of partial incapacity following total incapacity a supplementary agreement shall be made in accordance with the provisions of the Workmen's Compensation Act of the

State of Rhode Island," "that all reasonable bills for hospital and medical service and for necessary medicines shall be paid as provided in Article II, Section 5 of the Workmen's Compensation Act of the State of Rhode Island." The bill further states that, in accordance with the agreement during a period from the time of the accident until December 13, 1926, the respondent made payment to the complainant at the rate of $16 per week; the bill further states that after December 13, 1926, the respondent discontinued said weekly payments, refused to enter into a supplementary agreement for the period of the complainant's partial incapacity, and refused to pay, for the benefit of the complainant, the reasonable bills for hospital and medical service, and for necessary medicine.

The prayer of the bill is that the respondent be ordered specifically to perform the provisions of said agreement, "In that respondent be required to pay to your petitioner beginning on the 14th day of December, A. D. 1926, and continuing until petitioner has fully resumed his former occupation, a sum of money equal to one-half the difference between his average weekly earnings on the 9th day of August, A. D. 1926, and his present average weekly earnings and further, that respondent pay the reasonable bills for hospital and medical service as hereinbefore set forth."

From the language of those portions of the agreement set out in the bill the conclusion would not be unwarranted that the parties conceived that, in the premises, they were subject to the provisions of the Rhode Island Compensation Act. As we shall hold later, however, the contract of employment between the parties was maritime in its character. It was said in *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372, that such a contract has written into it the peculiar features of the general maritime law with reference to the question of liability for injuries to a seaman on shipboard and as to the measure of recovery for such injuries. The features of such a maritime contract were considered in *The Osceola,* 189 U. S. 158; and the rights of seamen have

been extended by the Seamen's Act of 1915 and the amend-ment thereto contained in the Merchant Marine Act of 1920.

It might be contended that a proper construction of said agreement would require the holding that the Workmen's Compensation Act was referred to by the parties in the agreement merely as the standard by which the extent of the respondent's obligation was to be measured, rather than by the principles of the maritime law as the same have been extended. If it should be determined that at the time of the making of the agreement the parties believed that they were subject to the provisions of the Rhode Island Workmen's Compensation statute, then they were acting under a mutual mistake of law. The effect upon the validity of the agreement of such a mutual mistake of law is not before us upon this appeal.

Under decisions of United States Supreme Court it has been held that the work of loading or unloading a vessel upon navigable waters, though such vessel be moored at a wharf, is of a maritime nature and that a workman so employed, although his master be other than the ship's owner, is engaged in a maritime pursuit. His contract of employment is a maritime contract, and he comes within the designation of a "seaman," when that term is used in the federal statutes. Injuries received in the course of such employment are likewise maritime and the rights and liabilities of a party in connection therewith are clearly matters within the admiralty jurisdiction as the same has been conferred by Congress. *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205.

Under the federal constitution all cases of admiralty jurisdiction are placed within the judicial power of the United States, with authority in Congress to make laws necessary to carry into execution such judicial power. By Section 9 of the Judiciary Act of 1789 and by successive judiciary acts Congress has placed in the United States District Court "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . .

480

saving to suitors in all cases the right of a common law remedy where the common law is competent to give it." It has been recognized by the United States Supreme Court in numerous decisions that under the saving clause just quoted a suitor may properly seek a common law remedy in a state court having due regard for the distinction in admiralty between a common law "remedy" and a common law "right" as that distinction was pointed out in *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372; *Engel* v. *Davenport*, 271 U. S. 33; *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50. It has been expressly held, however, that said saving clause is not sufficiently broad to render the parties to a maritime contract of employment subject to the provisions of a state workmen's compensation statute. *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205. By Act of October 6, 1917, Congress sought to extend the saving clause quoted above by adding thereto the following language "and to claimants the rights and remedies under the workmen's compensation law of any state." In *Knickerbocker Ice Co.* v. *Stewart*, 253, U. S. 149, this attempted extension of the saving clause was held to be unconstitutional.

After the injury in question the complainant might in reliance upon the decisions of the United States Supreme Court have commenced proceedings against the respondent in the Federal court to avail himself of the provisions of the general maritime law and the several acts of Congress in his favor, or he might have commenced his action at law in the state court, where his right of recovery and the extent of such recovery would still be governed by the provisions of the general maritime law and the acts of Congress affecting the rights of seamen. He did, however, enter into the agreement with the respondent which is now before us wherein, according to the statements of the bill, in reliance upon certain promises of the respondent as to compensation the complainant waived "his right to prosecute and sue at common law against" the respondent. Upon the alleged failure of the respondent to perform said agreement the

complainant is seeking to have the Superior Court sitting in equity order the respondent to specifically perform said agreement.

In so far as the agreement related to the making of a supplementary agreement with regard to partial incapacity, the complainant appreciated the apparent difficulty which would arise from attempting to order the respondent to "agree" with the complainant as to the existence of the complainant's partial incapacity, its extent, its probable duration and the rate of compensation. The complainant therefore has asked the court to order the respondent hereafter to pay compensation to the complainant in accordance with what the complainant claims should be the provisions of such a supplemental agreement. In effect the complainant is now asking the court to compel the respondent to perform the supposed terms of an agreement which has not been made. If the Superior Court should have taken jurisdiction in equity and attempted to grant the complainant's prayer it would have been necessary for that court, after passing upon the validity of the alleged agreement between the parties, to determine the disputed questions of fact existing between them with regard to the complainant's claim under the agreement for compensation for partial incapacity. Then if the court's determination should be in the complainant's favor the court would enter its decree ordering the respondent to make a money payment of the amount of the court's award. The travel which we have just outlined does not differ materially from what would have been that of the case if the complainant had commenced his action at law to recover damages for the alleged breach by the respondent of the agreement between the parties; save that in the latter case the respondent would have had an unquestioned right of trial by jury. The complainant's position in seeking equitable relief is clearly in disregard of one of the well recognized principles of chancery jurisdiction, i. e., that a court in equity will not decree the specific performance of a contract when a com-

plainant has a plain, adequate and complete remedy at law. This principle is particularly applicable when the object of a bill is to obtain a decree for the payment of money. In support of his prayer for specific performance the complainant cites to us *Boston & Maine R. R. Co.* v. *Union Mutual Fire Ins. Co.*, 83 Vt. 554 and 92 Vt. 137, and *Cook* v. *Richardson*, 178 Mass. 125. In each of those cases the court granted a prayer for specific performance upon which a decree was entered for a pecuniary recovery. An examination of those cases shows that in each, unlike the case at bar, there were peculiar features which made it particularly appropriate for the court's exercise of its equity jurisdiction to decree specific performance.

Complainant's appeal is dismissed. The decree appealed from is affirmed; the cause is remanded to the Superior Court for further proceedings.

*Fergus J. McOsker*, for complainant.

*Greenough, Easton & Cross, Richard E. Lyman, Arthur J. Levy*, for respondent.