Walter A. READ, Plaintiff,

v.

George P. BAKER et al., Defendants.

Civ. A. No. 4580.

United States District Court,
D. Delaware, Wilmington.

Sept. 29, 1977.

See also 438 F.Supp. 732.

John B. Kennedy of Kennedy & Kennedy, Wilmington, Del., for plaintiff.

Robert K. Payson of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LATCHUM, Chief Judge.

This case is before the Court on the defendants' application, in the form of an equitable counterclaim, to enforce the terms and conditions of an alleged compromise and settlement agreement entered into between the parties on the underlying causes of action.[1]  The issue raised by the defendants' counterclaim and plaintiff's answer[2] was tried by the Court, sitting in equity, on September 27, 1977.  After carefully considering the sufficiency and weight of the testimony[3] adduced at trial, the demeanor and credibility of the witness who testified, the documents admitted into evidence and the oral arguments presented by counsel at the conclusion of the trial, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.  This diversity action was originally filed in this Court on February 8, 1973. The plaintiff, a Delaware citizen, sought seven and a half million dollars as compensatory and punitive damages from the Penn Central Transportation Company, a Pennsylvania Corporation.[4]

1.  Docket Item 52.

2.  Docket Item 53.

3.  Because the parties have not ordered a transcript, the trial testimony has not been transcribed.

4.  Docket Item.  Because the Penn Central went into bankruptcy reorganization, George P. Baker, Richard C. Bond, Jervis Langdon, Jr. and Willard Wirtz, Trustees of the Property of Penn Central Transportation Company, Debtor, were substituted as defendants herein on May 9, 1973 (Docket Item 13); Nicholas P. Bash, M. D., a Pennsylvania citizen, was also named a party defendant in the original complaint but he was dismissed from the action on July 19, 1973 (Docket Item 18).

2. The complaint alleged that the plaintiff had been wrongfully discharged and libeled and slandered by the defendants and its employees.[5]

3. During the course of this litigation plaintiff has been represented by four different attorneys.

4. After considering defendants' motion for summary judgment, this Court on March 25, 1977, dismissed or granted judgment in favor of the defendants on plaintiff's claim for wrongful discharge, on his claim based on the publication of alleged slanderous and libelous statements made during the course of a 1971 judicial proceeding in the United States District Court for the Eastern District of Pennsylvania, and on his claim based on the publication of alleged slanderous or libelous statements made prior to February 8, 1971.[6] Thus, following the entry of that order the only claim of the plaintiff remaining for trial was whether the defendants knowingly, either orally or in writing, published or disseminated any false medical information concerning the plaintiff to others between February 1, 1971 and November 17, 1971, except for that revealed in the Pennsylvania litigation. In addition, there were a number of defensive issues which the jury would be required to resolve if, in fact, any false statements had been made during the relevant time period.[7]

5. A pre-trial stipulation was approved at a pre-trial conference held on April 4, 1977, and a jury trial was scheduled to commence on June 13, 1977, on the issues outlined by the Court at 430 F.Supp. *supra* at 478.[8]

6. On June 1, 1977, the parties advised the Court that a compromise and settlement had been agreed upon by the parties and that the scheduled trial was unnecessary; whereupon the jury trial was cancelled and the parties were advised to consummate the agreement of settlement promptly.

7. On August 25, 1977, defendants filed an equitable counterclaim alleging that, although the case had been compromised and settled, the plaintiff refused to consummate the settlement agreement; therefore, defendants sought specific performance thereof.[9]

8. From the evidence adduced at trial, it appears that sometime prior to March 1977, the defendants had submitted an offer to plaintiff's attorney to settle the case for $750.00. Plaintiff's then attorney, recognizing the weakness of the case, had encouraged the plaintiff to consider the settlement offer, and on March 28, 1977, after this Court's opinion on the summary judgment motion, his attorney sent plaintiff a copy of the opinion, advised him of its legal effect, and again urged the plaintiff to reconsider his position with respect to a possible settlement.[10]

9. Plaintiff wrote his then attorney on April 22, 1977, stating he would not settle the case for $750.[11]

10. On April 25, 1977, plaintiff's attorney again wrote plaintiff, discussed his 33 percent contingent fee and again urged plaintiff to settle his claim, pointing out that the Court's decision had severely narrowed the area of recovery and the uncertainty of any recovery if the case proceeded to trial.[12]

11. Sometime prior to May 24, 1977, defendants served an offer of judgment in the amount of $1000 upon plaintiff's then attorney.

12. Plaintiff was obsessed with the belief that he had a meritorious claim against the defendants despite the opinion and advice received from several experienced trial

---

5. Docket Item 1.

6. *Read v. Baker, et al.*, 430 F.Supp. 472, 477–78 (D.Del.1977).

7. *Id.* at 478.

8. Docket Items 43 & 44.

9. Docket Item 52.

10. PX 3.

11. PX 5.

12. PX 4.

attorneys.[13] He refused to face up to the narrow issues and the uncertainty which remain of his original claims.

13. On May 24, 1977, plaintiff met with his then attorney in the latter's office. His attorney discussed the case in detail, advised him of its weakness, the narrow issues remaining for trial, the effect of defendants' offer of judgment in the amount of $1000 and the distinct possibility that if plaintiff proceeded to trial and failed to recover a judgment more favorable than the offer of judgment he would incur all costs subsequently incurred.[14] Plaintiff was reluctant to settle. His attorney continued to persuade him to settle for the $1000 gross settlement figure, even though his attorney had been retained on a 33 percent contingent basis. Finally after much further discussion, plaintiff said that if he could get $1000 *net* for himself, he would settle. His attorney rightly believed, and the Court so finds, that at that point plaintiff expressly authorized his retained attorney, although with reluctance, to compromise the case provided he received $1000 net in settlement.

14. Plaintiff's attorney, an experienced litigator fully understanding the facts and law of the case, realized that if they proceeded to trial plaintiff faced the distinct possibility of recovering nothing, and he was then prepared, in plaintiff's sole interest, to accept defendants outstanding $1000 offer, if necessary, and to forego any attorney's fee in order to net the plaintiff the $1000 settlement recovery to which he had agreed.

15. On June 1, 1977, plaintiff's attorney telephoned defendants' counsel and asked whether the settlement offer could be raised to $1500. This would have permitted a $1000 net recovery for plaintiff and a $500 fee to his attorney.

16. Shortly thereafter, plaintiff's attorney on the same date received a telephone call from defendants' claim agent who refused to raise the settlement offer to $1500 but offered to pay $1250 as a gross settlement. After further negotiating discussions, plaintiff's attorney accepted the $1250 gross offer which would net plaintiff $1000 and provide for a reduced fee to plaintiff's attorney of $250.

17. Immediately after the $1250 compromise and settlement was agreed upon by plaintiff's attorney and defendants' claim agent, defendants' attorney on June 1, 1977, hand delivered the documents necessary to consummate the agreement to plaintiff's attorney.[15]

18. Plaintiff again met with his then attorney in the latter's office on June 9, 1977. Plaintiff was concerned and emotionally upset over the wording of the release that read in part that plaintiff was releasing the defendants "from any and all claims, demands, actions and causes of action of every kind whatsoever from the Beginning of the World to the date hereof." Even though assured by his attorney that the release operated only up to the time of execution, he was unconvinced and refused to execute it. Plaintiff erroneously believed he was releasing the defendants from all causes of action he might have in the future. His attorney, after calming the plaintiff down, again discussed the developments of the case in detail and the fact that plaintiff had agreed to accept $1000 net in settlement. Plaintiff acknowledged this but still insisted that he was not going to execute the release. The following day, June 10, 1977, plaintiff's attorney wrote to the plaintiff, recapitulated their conference discussions of the day before and again urged him to execute the release and return it to him, or to advise him if he did not intend to consummate the settlement as agreed upon, because he would then be forced to request the Court to permit him to withdraw as his attorney.[16]

---

13. In addition to his retained counsel, plaintiff has discussed his case with another local attorney and an attorney from Virginia.

14. Rule 68, F.R.Civ.P.

15. DX 1 & 2.

16. PX 1.

19. Under date of June 14, 1977, plaintiff wrote to his attorney stating that he would not sign the release now and to hold up for awhile.[17] On June 17, 1977, plaintiff's attorney advised defendants' counsel that plaintiff was refusing to sign the release and consummate the settlement.[18]

20. On August 22, 1977, plaintiff's present counsel entered an appearance in this case.[19]

## CONCLUSIONS OF LAW

■ 1. Jurisdiction exists by virtue of the Court's inherent power to enforce in equity a settlement agreement entered into between the parties litigant in the underlying pending case. *Berger v. Grace Line, Inc.*, 343 F.Supp. 755, 756 (E.D.Pa.1972), aff'd, 474 F.2d 1339 (C.A. 3, 1973); *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (C.A. 6, 1973).

■ 2. In Delaware an attorney of record in a pending action who agrees to a compromise of a case is presumed to have lawful authority to make such an agreement and the client bears the burden of rebutting that presumption. *Aiken v. National Fire Safety Counsellors*, 36 Del.Ch. 136, 127 A.2d 473, 475 (1956); *Strattner v. Wilmington City Electric Co.*, 3 Pennewill 453, 53 A. 436, 437 (Del.Super.1901).

■ 3. The credible evidence adduced indicates, that at the May 24 meeting with his retained attorney, plaintiff, with reluctance, expressly authorized his then attorney to compromise and settle the case provided he personally received $1000 net.

4. On June 1, 1977, plaintiff's then attorney, acting on the express authority of the plaintiff, agreed with the defendants' claim agent to accept $1250 in full settlement of this litigation which would produce $1000 net to the plaintiff and provide a fee of $250 for plaintiff's attorney.

■ 5. Having considered the entire case file, the depositions, pleadings, and the issues remaining for litigation, the settlement appears fair and reasonable to all concerned.

■ 6. A binding and enforceable oral compromise and settlement agreement was entered into between the parties on June 1, 1977, upon the express authority of the plaintiff, which this Court, in the interest of the policy favoring settlements of disputes and the avoidance of costly and time consuming litigation, should specifically enforce. *All States Investors, Inc. v. Bankers Bond Co.*, 343 F.2d 618 (C.A. 6, 1965), cert. den., 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74, reh. den., 382 U.S. 922, 86 S.Ct. 286, 15 L.Ed.2d 237 (1965).

■ 7. Defendants have no adequate remedy at law that would afford them protection from plaintiff's underlying slander and libel claims. To provide adequate relief, under the clear circumstances of this case, requires specific enforcement of the compromise settlement entered into by the parties. *Landau v. St. Louis Public Service Co.*, 364 Mo. 1134, 273 S.W.2d 255 (1954); *Boston & M.R.R. v. Union Mutual Fire Insurance Co.*, 92 Vt. 137, 101 A. 1012, 1015 (1917); *Cook v. Richardson*, 178 Mass. 125, 59 N.E. 675 (1901). Indeed, to refuse to enforce the agreement and permit the plaintiff to withdraw from his part of the bargain would work a fraud on the defendants.

8. Finding that the parties entered into a binding settlement agreement with plaintiff's express authority, the Court will order: (1) the defendants to deposit the sum of $1250 forthwith into the registry of this Court, (2) require the Clerk to pay over the sum of $1000 net to the plaintiff personally at the time he executes and delivers to the Clerk a release, substantially in the form shown in DX 2, (3) upon receipt of said executed release require the Clerk to pay over the remaining sum of $250 to C. W.

---

17. DX 3; apparently plaintiff was asking the advice of another counsel regarding the release.

18. PX 6.

19. Docket Item 51; plaintiff's former counsel was permitted to withdraw by a Court order of September 9, 1977. (Docket Item 57).

Berl, Jr., plaintiff's former attorney, and (4) permanently enjoin the plaintiff from further prosecution of the underlying claims for slander and libel against the defendants in this action.

The above shall constitute the findings of fact and conclusions of law required by Rule 52(a), F.R.Civ.P. and an order will be entered in accordance with these findings and conclusions.

## JUDGMENT AND DECREE

For the reasons set forth in the Court's Findings of Fact and Conclusions of Law entered in this case on this date, it is

ORDERED, ADJUDGED AND DE-CREED:

1. The defendants shall forthwith deposit in the registry of this Court, payable to the Clerk of the Court, the sum of $1250 in full settlement of the underlying claims in this action.

2. After receipt of the said sum referred to in paragraph 1 above, the Clerk shall pay over to Walter A. Read personally the sum of $1000 net at the time he executes and delivers to the Clerk a release substantially in the form shown as DX 2, filed in this case.

3. Following the receipt of the release stated in paragraph 2 above from Walter A. Read, the Clerk shall pay over to C. W. Berl, Jr., the remaining sum of $250 as attorney fee.

4. From this date forward the plaintiff, Walter A. Read, his attorneys and agents, are hereby permanently enjoined from the further prosecution of the underlying claims of this action against the defendants, their successors or assigns.