Jerry SHIELDS, Peter Meyer, Charles Zencey, Edward Yalisove and Robert Moffett, Appellants,

v.

KEYSTONE COGENERATION SYSTEMS, INC., and Department of Natural Resources and Environmental Control, and Coastal Zone Industrial Control Board, Appellees.

Superior Court of Delaware, New Castle County.

Submitted: Feb. 21, 1992.
Decided: March 12, 1992.
Revised: March 27, 1992.

See also 611 A.2d 502.

Robert Jacobs, of Jacobs & Crumplar, P.A., Wilmington, for appellants.

Charles Zencey, pro se.

Richard E. Poole, of Potter Anderson & Corroon, Wilmington, for appellee Keystone Cogeneration Systems, Inc.

Keith A. Trostle, Deputy Atty. Gen., of Dept. of Justice for the State of Del., for appellee Dept. of Natural Resources and Environmental Control.

Marsha Kramarck, Deputy Atty. Gen., of Dept. of Justice for the State of Del., for appellee Coastal Zone Indus. Control Bd.

## OPINION

TAYLOR, Judge.

The attorneys who represented appellants and the attorney who represented Keystone Co–Generation Systems, Inc. entered into a stipulation of settlement which by its terms ends this appeal. The stipulation is subject to Court approval. Charles Zencey, one of the appellants, opposes Court approval of the settlement. As a result of Mr. Zencey's position, the appellants' attorneys no longer represent him.

This appeal is brought by citizens concerned with protecting the environment and wildlife who have participated in various proceedings involving permits and a lease which are required as a prerequisite to construction and operation of an electric power generating plant to be built along the Delaware River in New Jersey. The captioned appeal involves the Order of four members of the Coastal Zone Industrial Control Board which purported to affirm the Order of the Secretary of the Department of Natural Resources and Environmental Control granting, subject to conditions, a "coastal zone and subaqueous lands permit" to Keystone Cogeneration Systems, Inc. The settlement by its terms would resolve the several proceedings relating to the Keystone project in which these appellants and other participants [1] are presently involved. Because Mr. Zencey opposed approval of the stipulation at the time it was presented to the Court, a three-day hearing was held at which testimony was given concerning the events that culminated in the stipulation. After the close of the hearing, Mr. Zencey and the

attorneys for the parties presented written submissions.

The attorneys' position is that the participants authorized their attorneys to negotiate a settlement with Keystone under which Keystone would agree to certain terms defined by the participants. Mr. Zencey's position is that he and the other participants authorized negotiations but did not authorize entering into an agreement to withdraw the appeal.

The possibility of settlement was initiated by Keystone in early January, 1992 by its submission of proposed settlement terms to appellants' attorney, Robert Jacobs [Jacobs]. The proposal was subject to a January 15, 1992 deadline and was to encompass all appeals currently pending "or that might be pending in any global settlement" and to apply to all seven participants. On January 6, 1992, Jacobs sent that proposal to Dr. Shields, who circulated that proposal to participants on January 6, 1992. Thomas C. Crumplar [Crumplar], Jacobs' partner, submitted a further discussion of the proposed settlement by letter to participants on January 9, 1992.

On January 14, 1992, all the participants met with Jacobs, Crumplar, and Michael J. Malkiewicz [Malkiewicz], who represented some of the participants in an appeal relating to a subaqueous land lease to Keystone, in a session to discuss whether the participants were interested in settling with Keystone and on what terms. That evening, the participants first met with the attorneys, then they met without the attorneys, and thereafter they met again with the attorneys.

During the private session, the question was raised whether the participants favored settlement, and they agreed unanimously that they favored negotiating with Keystone for settlement. They then discussed the demands which should be made. These were divided into items which were nonnegotiable and those which might be conceded during the negotiations.

1. The term "appellants" refers specifically to the five named parties on this appeal; "participants" includes these appellants and the two other citizens who are involved only with the subaqueous land lease proceeding. Appellant Meyer is also involved in a New Jersey administrative proceeding involving a Prevention of Significant Deterioration Permit.

At the final session, both the nonnegotiable and the negotiable demands were discussed with the attorneys and were noted by Jacobs for use in negotiations with Keystone's attorney. Malkiewicz and Jacobs raised the issue of whether Jacobs was authorized to settle with Keystone if the nonnegotiable demands were met and no one expressed dissent from that authorization.

Based on that authorization, Jacobs submitted a written counteroffer on January 15, 1992 to Richard Poole [Poole], Keystone's attorney. Intensive negotiations followed between the attorneys, in which Jacobs obtained Keystone's agreement to all of the nonnegotiable demands produced at the January 14, 1992 meeting and some demands which had been on the negotiable list. On the afternoon of January 20, 1992, the attorneys for the participants and Keystone informed the Court by telephone that the cases had been settled. Therefore, the hearing which had been scheduled for the next day for argument on the merits of the appeal was directed toward Court approval of the settlement agreement reached by the attorneys.

On the evening of January 20, 1992, the participants met with Crumplar. (Jacobs was unavailable for medical reasons.) Crumplar explained to the participants the terms of the settlement. Some of the participants expressed additional demands. When Keystone was informed of these demands, it agreed to an estimated 95 percent of the additional demands. The agreement as modified was incorporated in a written agreement signed by the attorneys for the participants and Keystone which was the subject of a hearing on January 29, 1992. At that hearing Mr. Zencey stated that he had not authorized the participants' attorneys to settle the case. Other participants had differing positions about their authorization of the settlement but only Mr. Zencey expressed a desire to continue litigating the appeal.

In view of Mr. Zencey's position, the Court held a three-day hearing on February 3, 4, and 5 at which the interested parties had the opportunity to testify about pertinent matters which led up to the settlement agreement. Concurrent briefs were submitted on February 13, 1992 and February 19 and 21, 1992.

■ The applicable principle is that authority given by a client to his attorney to settle a case when exercised by the attorney in accordance with the terms of the authority culminating in settlement of litigation is binding upon the client. *Read v. Baker*, 438 F.Supp. 737 (D.Del.1977), *aff'd without opinion*, 577 F.2d 728 (3d Cir. 1978) *cert. denied*, 439 U.S. 869, 99 S.Ct. 197, 58 L.Ed.2d 180 (1978); *Moyer v. Moyer*, Del.Supr., 602 A.2d 68 No. 159, 1991 (1992); *Aiken v. National Fire Safety Counsellors*, Del.Ch., 127 A.2d 473 (1956); *Main Line Theatres, Inc. v. Paramount Film Distrib. Corp.*, 298 F.2d 801 (3d Cir. 1962). This principle applies even though the client attempts to repudiate that authority after settlement has been reached by the attorney. *Corbesco, Inc. v. Local No. 542, Intern. Union*, 620 F.Supp. 1239 (D.Del.1985); *Read v. Baker, supra; Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., supra.*

■ From the testimony I find that when participants were asked at the January 14, 1992 meeting whether they favored settling the litigation, the response was in the affirmative, with no participant dissenting. Further, when Jacobs at that meeting read the nonnegotiable demands and one of the attorneys asked whether the participants agreed to settle if all the nonnegotiable demands were agreed to by Keystone, the response was in the affirmative, with no participant dissenting.

Mr. Zencey testified that he and the other participants had looked upon this appeal as a group action and that the participants would work as a group. When the question was put to the group whether to authorize Jacobs to negotiate for a settlement and on what terms, Mr. Zencey should have expressed his opposition if he disagreed with the position the group was taking. By his silence at that time, the clear inference is that he joined in the group authorization for Jacobs to negotiate and settle

with Keystone on the best terms obtainable if the nonnegotiable demands were met.

■ Mr. Zencey contends that he understood that the question was whether the attorney was authorized to "negotiate" but not to settle. He relies on the fact that neither *Webster's New International Dictionary* (2d ed.) nor *Black's Law Dictionary* (4th ed. 1968) include the word "settle" in their definitions of "negotiate." However, both texts include the idea of "coming to terms upon some matter" in their respective definitions. Furthermore, testimony established that the word "settlement" was used in letters circulated prior to the January 14, 1992 meeting, copies of which were sent to all participants. Where, as here, certain terms have been established which would result in settlement, negotiate means more than merely talking to the opposing party. It means to settle if the specified terms have been met.

■ The argument is also made that the fact that the participants' attorneys continued to negotiate for additional negotiable demands after informing the Court on January 20, 1992 that settlement had been reached shows that settlement had not in fact been reached. That argument might carry some weight if thereafter Jacobs and Crumplar had given up some matter to which Keystone had already agreed by January 20, 1992. However, the testimony shows that they did not make any concessions to Keystone, but instead pursued further concessions from Keystone. That Keystone made further concessions after that date does not detract from the binding effect of the January 20, 1992 agreement.

■ Mr. Zencey also says he never intended to authorize settlement, but intended merely to find out what concessions Keystone would make. He did not express that limitation on the attorneys' authority when the subject of authorization of the attorneys was raised at the January 14, 1992 meeting. An intent which remains unexpressed and is not manifest to others cannot prevail. *"Industrial America", Inc. v. Fulton Industries, Inc.*, Del.Supr., 285 A.2d 412 (1971); *Western Natural Gas Co. v. Cities Service Gas Co.*, Del.Supr., 223 A.2d 379 (1966).

In determining whether the participants authorized their attorneys to settle at the January 14, 1992 meeting, the testimony of Dr. Shields is strongly persuasive. Dr. Shields had acted as the leader of the participants throughout the litigation. He testified that he considered that that meeting had authorized the participants' attorneys to settle the case if Keystone accepted the nonnegotiable demands which had been specified at the meeting. Two other appellants, Mr. Moffett and Dr. Yalisove, also had the same understanding as Dr. Shields. Another appellant, Mr. Meyer, signed a statement to the same effect. Mr. Akutowitcz, a participant, stated he agreed to abide by the settlement. Mrs. Conway, another participant, stated that the agreement did not achieve what she would have liked but she would not oppose the settlement.

■ Mr. Zencey contends (joined by Mrs. Conway) that the participants did not achieve their objectives in the settlement. Settlement contemplates that each side may make concessions in the interest of terminating litigation. *Pascarella v. Brock*, 190 N.J.Super. 118, 462 A.2d 186 (1983). The testimony shows that participants at the January 14, 1992 meeting developed a list of nonnegotiable demands and also a list of negotiable demands. Those instructions meant that their attorneys were not authorized to settle the litigation without achieving the nonnegotiable demands, but they could settle when the nonnegotiable demands had been agreed to by Keystone and after reasonable effort to achieve the negotiable demands if their attorneys concluded that those could not be achieved. Keystone had agreed to the nonnegotiable demands and some negotiable demands when the attorneys informed the Court on January 20, 1992 that settlement had been reached. From the testimony, I find that the settlement which Jacobs and Crumplar reached with Keystone achieved the nonnegotiable demands and that Jacobs and Crumplar had made reasonable efforts to achieve the negotiable demands. There-

fore, they were authorized to settle under those terms.

■ An agreement entered into by an attorney is presumed to have been authorized by his client to enter into the settlement agreement. *Moyer v. Moyer, supra; Aiken v. National Fire Safety Counsellors, supra; TransWorld Airlines, Inc. v. Summa Corp.*, Del.Ch., 394 A.2d 241 (1978); *Strattner v. Wilmington City Electric Co.*, Del.Super., 53 A. 436 (1901). The burden is upon the party who challenges the authority of the attorney to overcome the presumption of authority. *Aiken v. National Fire Safety Counsellors, supra.*

One of the witnesses at the hearing stated that Mr. Zencey said that on the morning of January 15, 1992, after the January 14 meeting, "I woke up and said I've been manipulated." Mr. Zencey does not deny having made that statement. This statement leads to the inference that Mr. Zencey had heard and understood the discussion of the night before authorizing Jacobs to settle and on the morning after had second thoughts about the wisdom of participants having authorized Jacobs to settle.

■ The evidence shows that Jacobs and Crumplar after reaching the settlement with Keystone sought to have participants sign a paper which stated:

The undersigned acknowledge that we hired the law firm of Jacobs & Crumplar, P.A. to represent us in litigation and settlement against the Keystone Cogeneration Plant. Some of us had hired Mike Malkiewicz to represent us in part of the environmental battle against Keystone. We understand the parameters of the settlement we had authorized and understand Jacobs & Crumplar, P.A.,

will continue to sign all Court settlement documents on our behalf.

Four of the participants signed the paper on or about January 27, 1992. The argument is made that at that late date, Jacobs & Crumplar did not have authorization to settle. The testimony is that the paper was drawn out of an abundance of caution and did not represent belief that settlement had not been properly authorized at an earlier time. While I find no requirement that settlement must be authorized in writing, it is better practice to have signed authorization. However, I do not find that an oral authorization of settlement is invalid or unenforceable. Nor do I find that it warrants the conclusion that Jacobs and Crumplar did not have authorization to settle on the terms specified at the January 14, 1992 meeting.

Based on the evidence reviewed above, I find that Mr. Zencey by not dissenting from the participants' group authorization of Jacobs to settle the case upon the participants' terms is bound by the settlement reached pursuant to that authorization and that he has not met the burden of proof to overcome the presumption of the participants' attorneys' authority to reach the settlement.

The Court will enter an order approving the agreement. The Court will also consider any application complying with Superior Court Civil Rule 5(g) for all or any part of the documents to be sealed.